The defendant tenants have appealed from a judgment for the plaintiff landlord in a summary process action seeking possession of leased premises for the nonpayment of rent.
The defendants raised three issues on appeal: (1) whether the notice to quit complied with statutory standards; (2) whether the trial court considered the applicability of the equitable doctrine against forfeiture; and (3) whether the trial court erred in excluding evidence bearing on the defendants' financial difficulties prior to executing the lease and option with the plaintiff.
The facts are not seriously disputed: On August 9, 1978, the defendants, in order to avoid foreclosure of their home, sold it to the plaintiff. Simultaneously, the parties executed a two-year lease with five two-year option periods exercisable by the defendants. Additionally, an option to repurchase the property was granted, applying, as a credit toward the purchase price, a portion of the paid rental installments.
A continuing default in rental payments from July, 1979, to March, 1980, caused the plaintiff to secure a judgment for possession in a previous summary process action. In settlement of that litigation, the parties entered into an agreement reinstating the original *Page 343 
lease and extending it to August 31, 1982. Some minor modifications of the lease were negotiated but they are of no moment in this litigation.
The defendants failed to tender the rental installment for the month of January, 1981. Upon expiration of the thirty-day grace period, as provided in the lease, the plaintiff served a notice to quit on the defendants on February 4, 1981, demanding that the premises be vacated on February 13.
 I
The defendants' first contention is that the notice to quit failed to comply with statutory standards and therefore was ineffective. The basis for this claim is the statement added by the plaintiff to a standard form of notice to quit, which read: "Any payments tendered after service of the notice to quit will be accepted for reimbursement of costs and attorneys' fees and for use and occupancy only with full reservation of rights to continue with the eviction action." The defendants make no charge that the notice to quit violates General Statutes 47a-23;[1] rather they argue that the added statement is inconsistent with an intention to terminate the lease, the condition precedent for the commencement of a summary process action. We disagree.
It is fundamental that the essential prerequisite for a successful summary process is the proper delivery of a sufficient notice to quit. O'Keefe v. Atlantic Refining Co., 132 Conn. 613,622, 46 A.2d 343 (1946); Webb v. Ambler,125 Conn. 543, 551, 7 A.2d 228 (1939). Upon examination of the notice to quit, we conclude that it conveys a clear intention to terminate the lease and to proceed with judicial process to secure possession. The added statement clearly admonishes that any sums offered after receipt of the notice will be retained for purposes other than rent. *Page 344 
The admonition serves two useful purposes. It avoids misleading tenants who tender late payments and it insulates the summary process action from being flawed by the acceptance of rent after commencement of the summary process. Borst v. Ruff137 Conn. 359, 361.62, 77 A.2d 343 (1950). "If, as the landlords claimed, the lease had already been terminated, they had a right to refuse a belated tender of rent, and to notify the tenant that it would be accepted only as compensation for use and occupation. If the tenant paid the money after that notification, the status quo was preserved." Casner v. Resnik, 95 Conn. 281, 287, 111 A. 68
(1920). Moreover, in addition to use and occupancy, the prefixed language seeks to set off late tenders against costs and attorneys' fees, both of which are recoverable under General Statutes47a-26d and 47a-4 (a)(7).
The defendants' contention is that a plaintiff who continues to claim rights under a lease cannot initiate a summary process action based on termination of the lease. The argument is faulty. The defendants confuse the termination of a lease with its abandonment. A landlord's termination of a tenant's possessory rights, based on breach of a rental covenant, will not be construed as a waiver of the landlord's rights under a lease. Club Road Corporation v. Whitehead, 34 Conn. Sup. 580, 583,378 A.2d 110 (1977).
 II
As their second claim of error, the defendants contend that the trial court should have considered the equitable doctrine against forfeiture. Implicit in this charge is that the trial court either failed to consider or incorrectly rejected the doctrine of nonforfeiture. Now that we have abandoned our former rule that equitable defenses are unavailable in a summary process action, the trial court could properly have relied upon these principles. Danpar Associates v. Falkha,37 Conn. Sup. 820, 823, 438 A.2d 1209 (1981); Mark I *Page 345 
Enterprises, Inc. v. Sendele, 37 Conn. Sup. 569,572-73, 427 A.2d 1352 (1981); Steinegger v. Fields, 37 Conn. Sup. 534, 536, 425 A.2d 597
(1980). It is elementary that a court of equity, even in the absence of fraud, accident or mistake may grant relief to prevent a forefeiture resulting from the breach of a covenant to pay rent upon payment or tender of all arrears of rent with interest. Thompson v. Coe, 96 Conn. 644, 655,115 A. 219 (1921). "Equity will intervene where `the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally' the conditions of the lease." Nicoli v. Frouge Corporation, 171 Conn. 245, 247, 368 A.2d 74
(1976), quoting F. B. Fountain Co. v. Stein,97 Conn. 619, 626-27, 118 A. 47 (1922); see Galvin v. Simons, 128 Conn. 616, 620, 25 A.2d 64 (1942). The defendants' argument is unsupported by the trial record. Examination of the record discloses that the court considered application of the doctrine and rejected it in this case.
The issue of equitable relief against forfeiture was raised through the third special defense. To determine whether the trial court considered equitable nonforfeiture, we look to the memorandum of decision. In the absence of a finding, the trial court's memorandum of decision now becomes the basis to test the court's conclusions. Practice Book 3060B; see Cervantes v. Administrator, 177 Conn. 132, 134, 411 A.2d 921
(1979); Smith v. Zoning Board of Appeals,174 Conn. 323, 325, 387 A.2d 542 (1978).
In its memorandum of decision, the trial court clearly addressed and considered the equitable doctrine against forfeiture. It reviewed at length the equitable principles set down in Thompson v. Coe, supra, and their application to summary process by virtue of Steinegger v. Fields, supra. After extensive review of the evidence and the factual basis of its decision, *Page 346 
the trial court concluded that "the equities here are more clearly with the plaintiff." Additionally, the trial court found no unusual or exigent circumstances, or accidents or interventions by third parties to cause the rental default. It concluded that the defendants were unable to meet the financial burden of owning or occupying this property and that equity did not require that the plaintiff repeatedly forego what were clearly his rights under the lease, the option and chapter 830 of the General Statutes.
We must not be unmindful that the purpose of summary process is to provide an expeditious remedy to a landlord in order to remove a holdover tenant. Prevedini v. Mobil Oil Corporation,164 Conn. 287, 292, 320 A.2d 797 (1973). In a summary process action, speed is of the essence. Mayron's Bake Shops, Inc. v. Arrow Stores, Inc., 149 Conn. 149,154, 176 A.2d 574 (1961). Summary process is meant to be simple, uncluttered, and, above all, summary. Atlantic Refining Co. v. O'Keefe,131 Conn. 528, 530, 41 A.2d 109 (1945).
There are no special elixirs which trigger the extraordinary remedies of equity. Each party seeking equitable relief in the summary process action is required to prove the necessity for invoking the powers of equity. The doctrine against forfeiture cannot be dilatorily invoked to eviscerate the statutory mandates of our summary process laws. Under circumstances, however, where the conscience is shocked or the forfeiture unconscionable, the doctrine against forfeiture should be an available shield to the tenant. Nicoli v. Frouge Corporation, supra.
The defendants have neither attacked the facts found nor requested a further articulation. Practice Book 3082. We find that the trial court's conclusions are legally correct and supported by the facts set out in the memorandum. Pandolphe's Auto Parts, Inc. v. Manchester, 181 Conn. 217,221-22, 435 A.2d 24 (1980). *Page 347 
 III
The defendants' final claim is that the trial court excluded evidence pertinent to the equitable defense of nonforfeiture. Although the transcript discloses four evidential rulings and exceptions, only one ruling has been briefed. We therefore consider the claims regarding the remaining rulings on evidence abandoned. Practice Book 3060F (c)(3); see Mihalczo v. Woodmont, 175 Conn. 535,537, 400 A.2d 270 (1978).
The defendants attack the court's ruling sustaining an objection which excluded testimony relating to the defendants' financial circumstances leading to foreclosure proceedings antedating August 9, 1978.[2]
Although the objection was offered on remoteness, the trial court sustained it on the basis of the parol evidence rule. The trial court's reason for sustaining the objection is of no consequence since the ruling itself was correct. Tait LaPlante, Handbook of Connecticut Evidence 3.4; see Bradbury v. South Norwalk,80 Conn. 298, 302-303, 68 A. 321 (1907).
The excluded inquiry sought to elicit the causes of the defendants' foreclosure, the history of this property and their involvement in it. No offer of proof was submitted nor grounds stated upon which the question was claimed. Practice Book 288; Tait LaPlante, supra. No proof was offered that the plaintiff was either connected to the foreclosure or contributed *Page 348 
to the defendants' financial distress. The trial court could only speculate as to the connection between the failure to pay the January, 1981 rent and the events leading up to the foreclosure in 1978. The record joining this plaintiff with the defendants' financial failures either in 1978, or 1981, is barren.
The defendants' claim that the excluded question was an attempt "to put the equities before the court" is insufficient to invoke the protective shield of equity. Parties seeking the mitigating beneficence of equity are required to assert the grounds upon which equity ought to intervene. Absent this, the trial court is not properly alerted. 27 Am.Jur.2d, Equity 19, p. 541; see Casalo v. Claro, 147 Conn. 625, 630, 165 A.2d 153
(1960).
The question was properly excludable as remote. "Generally speaking the question of remoteness, as justifying the exclusion of evidence, must depend upon all the considerations, including time, the character of the evidence, and all the surrounding circumstances which in the opinion of the court ought to have a bearing upon its worthiness to be brought into consideration and determination of the matter in contention." Holden Daly, Connecticut Evidence 67d, p. 217; see Steiber v. Bridgeport, 145 Conn. 363, 366, 143 A.2d 434 (1958).
We cannot hold, in view of the evidence and pleadings in the whole record, that the trial court's ruling was clearly erroneous. Collette v. Collette, 177 Conn. 465, 472, 418 A.2d 891 (1979); Casalo v. Claro, supra, 633; Practice Book 3060P.
 There is no error.
In this opinion DALY and COVELLO, Js., concurred.