JOSEPH MACHA *v.* EASTERN CONNECTICUT TRAINING SCHOOL FOR FIREMEN, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 11-613-60M

152

Argued August 17—decided October 10, 1962

*Walter J. Ogozalek,* of Willimantic, for the appellant (plaintiff).

*John Allen Spector,* of Willimantic, for the appellee (defendant).

JACOBS, J. This summary process action was brought by the lessor to recover possession of premises, located in Willimantic, by virtue of the following allegations: Joseph Macha by written instrument leased a large tract of land to the defendant for a term of twenty-five years from the first day of July, 1955, with a covenant to pay the stipulated rent on the first day of July of each year, in advance, with a provision that the lease should expire and terminate if the rent remained unpaid ten days after it was due. The rent was not paid on July 1, 1960, nor was it paid within ten days thereafter as provided in the lease. It was further alleged that "[t]he defendant, in said lease, has waived notice to quit possession of said premises."

The basic claim of the lessee is that the complaint failed to allege a cause of action of summary process because there is no allegation showing an unequivocal act on the part of the lessor to terminate the lease. This appeal is confined only to the ruling sustaining the demurrer. The record before us is even more barren of material than that before

the court in *Rosa* v. *Christian,* 135 Conn. 364, which contained the pleadings and the lease but no judgment file; here, we have the pleadings and the judgment file but no lease. In these circumstances, we do not intend to go further in this case than its exigencies require.

Where a clause in a lease specifies that the lease shall "expire and terminate" upon the happening of some contingent event, the mere happening of the event does not ipso facto work a termination of the tenancy. Nor is it material that the lease omitted the words "at the option" or "at the election" of the lessor. "The rule now recognized . . . [in England], and in most parts of this country, is that, even though the instrument of lease provides that the lease shall become void or terminate upon the breach of a stipulation by the lessee, such a breach does not terminate the tenancy until the landlord has in some way signified his election that it shall do so. And such election by the landlord is a *fortiori* necessary in the case of a lease which provides for a right of re-entry or forfeiture on breach of a condition. . . . The effect of these various decisions seems to be that, whatever the language used, whether that adapted to the creation of a special limitation or a condition subsequent, it will, if the contingency referred to is in default by the tenant, be construed as creating an estate on a condition subsequent, and not one on special limitation." 2 Tiffany, Landlord and Tenant, pp. 1369, 1370; see 1 Underhill, Landlord and Tenant, p. 643; *Bowman* v. *Foot,* 29 Conn. 331, 338; *Hartford Wheel Club* v. *Travelers Ins. Co.,* 78 Conn. 355, 358; *Thompson* v. *Coe,* 96 Conn. 644, 651; note, 118 A.L.R. 283. "Under . . . [the provision in question], the failure to pay the rent during the first ten days of the month of . . . [July, 1960] was a breach of the defendant's covenant, and he thereby

lost his right to a continuance of the lease and the lessor gained the right to declare a forfeiture of the lease in the manner provided by law. . . . The breach of the covenant was not in and of itself a forfeiture. In order actually to terminate the lease, it was necessary for the lessor thereafter to do some unequivocal act, showing to the lessee his intention so to terminate it." *Kovner* v. *Dubin,* 104 Conn. 112, 118, and cases cited; see *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156. It is the notice, not the breach, which cuts off the term. "When the lessor . . . elects to treat such a lease as void for a breach of any of the covenants, the lease is not avoided from the date of the breach, *but only from the date of the election.* The lessor need not re-enter in order to determine the lease, *but he must do some unequivocal act that signifies to the lessee his intention to determine it."* 1 Wood, Landlord and Tenant (2d Ed.) p. 453, citing *Read* v. *Tuttle,* 35 Conn. 25; *Bowman* v. *Foot,* supra.

Upon this limited record, there is nothing to indicate or suggest that the language in the lease was used in other than the narrow and technical meaning which it has acquired at common law. "[I]t is to be presumed to have been used with that meaning." *Judd* v. *Mutual Bank & Trust Co.,* 114 Conn. 553, 557.

But, argues the plaintiff, § 52-533 of the General Statutes provides that "[w]hen, in any written lease of any land, . . . notice to quit possession has been expressly waived by the lessee, the ten days' notice prescribed in section 52-532 shall not be necessary; and complaint and summons may issue in the same manner as if such notice to quit had been previously given." The ten days' notice referred to in § 52-533 apparently relates to termination of leases for causes other than nonpayment of the rent and has no application to the case at bar.

The parties have argued various other legal propositions, but the sustaining of the defendant's demurrer on the ground that the lease was not terminated in a manner provided by law decides the case as to both counts.

There is no error.

In this opinion KOSICKI and GEORGE, Js., concurred.